537 F.2d 1336
 17 P.U.R.4th 252
 HIGHLAND RESOURCES, INC., Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
George R. BROWN, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
HIGHLAND RESOURCES, INC., Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent.
 Nos. 75-3341, 75-3359, 75-3396.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 3, 1976.
 
 James W. McCartney, Judith M. Johnson, Jack L. Bianchi, Houston, Tex., for petitioners.
 Drexel D. Journey, Gen.Counsel, Allan Abbot Tuttle, Sol., Steven A. Taube, Atty., FPC, Washington, D.C., for respondent.
 Petitions for Review of the Orders of the Federal Power Commission (Texas Cases).
 Before CLARK, RONEY and TJOFLAT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 In these consolidated appeals both petitioners, Highland Resources, Inc., (Highland) and Brown, assert that the Federal Power Commission (FPC) wrongfully refused to grant them small producer certificates. In addition, Highland appeals the FPC's refusal to waive large producer filing requirements while its application for small producer certification was pending. We will discuss each of these issues in turn.
 
 
 2
 * Under FPC Order No. 428, 45 F.P.C. 454 (1971), producers who are not affiliated with natural gas pipeline companies and whose total jurisdictional sales, including those of affiliated producers, do not exceed 10 million Mcf. of gas per year are eligible for small producer certificates. Such certificates exempt their possessors from many filing requirements of the Commission.
 
 
 3
 Both Highland and Brown applied for such certificates on June 6, 1974. Each individually had sales less than 10 million Mcf. per year. Nevertheless, the FPC denied their applications. They found both to be affiliated with Texas Eastern Transmission Corp. (Texas Eastern), which is both a gas pipeline company and a gas producer. When linked with Texas Eastern, the sales of both Highland and Brown exceed the small producer limit. It is our task to determine whether the Commission acted on the basis of substantial evidence when it found Brown and Highland affiliated with Texas Eastern. See Natural Gas Act Sec. 19(b), 15 U.S.C. Sec. 717r(b) (1970).
 
 
 4
 An "affiliated producer" is defined in the Regulations:
 
 
 5
 "Affiliated producers" are persons who, directly or indirectly, control, or are controlled by, or are under common control with, the applicant producer. Such control exists if the producer has the power to direct or cause the direction of, or as a matter of actual practice does direct, the management and policies of another producer, whether such power is exercised alone or through one or more intermediary companies, or pursuant to an agreement, and whether such power or practice is established through a majority ownership or voting of securities, common directors, officers or stockholders, voting trusts, holding trusts, associated companies, relationship of blood or marriage, or any other direct or indirect means. 18 C.F.R. Sec. 157.40(a)(2) (1976) (emphasis supplied).
 
 
 6
 Applying this regulation, the Commission relied on the following facts, inter alia, to find affiliation with Texas Eastern: (1) Brown was one of the original organizers of Texas Eastern; (2) Brown was the first chairman of the board of Texas Eastern; (3) Brown is currently a director of its nine-member board and chairman of its four-member executive committee; (4) Brown has significant stock holdings in Texas Eastern; (5) there is a history of interrelationship between Brown and Texas Eastern; (6) O'Connor, the president of Highland, is Brown's son-in-law; (7) O'Connor is a director of Texas Eastern; (8) Highland's shareholders are daughters and a niece and nephew of Brown; (9) Texas Eastern is both a gas pipeline company and a gas producer. These facts amply demonstrate that there was sufficient commonality of interest among Texas Eastern, Brown and Highland to satisfy the test of "power to direct ... the management and policies of another producer...." Id. We hold that the FPC's decision that both Brown and Highland were affiliated with Texas Eastern was supported by substantial evidence.[1]
 
 II
 
 7
 Highland also challenges the FPC's refusal to waive certain large producer filing requirements which it did not meet while its small producer application was pending. After filing its application in June of 1974, Highland made several new jurisdictional sales and collected its contract rates for existing and new sales. Although large producers are required to file with the FPC before transacting such business, Highland did not do so. Instead, it relied on Order No. 428-B, 46 F.P.C. 47, 52 (1971), which states,
 
 
 8
 Following the filing of an application [for a small producer's certificate], temporary authorization is not necessary for a small producer to commence new jurisdictional sales or to collect a contract rate for existing or new sales as of May 2, 1971, or the date of filing application, whichever is applicable.
 
 
 9
 Although clearly written, this provision was explained by a form letter from the Secretary of the Commission accompanying the application forms for the small producer certificate:
 
 
 10
 Pursuant to Order No. 428, ... a producer who applies for small producer exemption may, subject to the limitations set forth in said order, commence new jurisdictional sales or collect its contract rates for existing or new sales as of the date of filing of its application for exemption, regardless of pricing area, without further filings with this Commission.
 
 
 11
 Highland's contracts contain clauses which allow it to charge whatever the FPC finds to be the just and reasonable rates for large producers. On October 1, 1974, while Highland's application was pending, the FPC allowed an escalation in price and in December set January 31, 1975, as the filing deadline for large producers to collect such new rates as of June 21, 1974. Since Highland had received no word on its application by January 31, 1975, it did not file.
 
 
 12
 After receiving its rejection on May 13, 1975, Highland filed the appropriate papers with the Commission on June 11, 1975, and asked that they be given nunc pro tunc effect to June 21, 1974. The FPC, however, refused to do so. The Commission declared that a "prudent" company would have protected itself by filing the papers on or before the January 31, 1975, deadline even though its small producer certificate was pending. It found no "good cause" to accept the filings other than prospectively.
 
 
 13
 Highland alleges that the Commission bred reliance by its published order and that its refusal to give Highland's filings retroactive effect is wholly arbitrary. We agree and reverse the Commission here. The FPC does not allege that Highland's application for a small producer certificate was patently frivolous or in bad faith. Parties should not be put to the task of ascertaining to their peril what the Commission regards as "prudent" action. They are entitled to rely on published pronouncements of the Commission as to what action they need or need not take.
 
 III
 
 14
 In sum, we hold that the FPC's finding that neither Highland nor Brown qualified for small producer certification is conclusive since it is supported by substantial evidence. On the other hand, the Commission's refusal to give nunc pro tunc effect to the rate filings of Highland was clearly arbitrary and must be reversed. On remand, the Commission should give Highland's filings of June 11, 1975, retroactive effect.
 
 
 15
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART WITH INSTRUCTIONS.
 
 
 
 [2]
 When this appellate's petition was prepared, he could not have known that his sole prospect of habeas relief lay in a claim that he did not have a fair opportunity to litigate his fourth amendment claim in Alabama courts. Under these circumstances, the case should be remanded to allow appellant to address the requirements of Stone v. Powell, --- U.S. ----, 96 S.Ct. 3037, 49 L.Ed.2d ----, 44 U.S.L.W. 5313 (1976). But in future applications of Stone v. Powell, supra, no such remand will be required. Rather the burden will be on a petitioner to plead and prove at the federal trial level a want of opportunity fairly and fully to litigate any fourth amendment claim in the state courts
 
 
 [1]
 Petitioners complain that the FPC improperly applied a conclusive presumption now found in the regulation's definition of an "affiliated producer":
 Also, for the further purposes of this section, the existence of one or more directors of an applicant producer in common with another producer shall be deemed a conclusive presumption of affiliation and control. 18 C.F.R. Sec. 157.40(a)(2) (1976).
 This presumption was only to be applied prospectively to applications filed after August 1, 1974. Order No. 428-E, 52 F.P.C. 130 (1971). The Commission denies basing its finding of affiliation on this conclusive presumption. It argues, instead, that it based its conclusion on the evidence outlined in this opinion, which evidence includes the fact of co-directors. We agree with the FPC in that it nowhere claims to be applying this presumption in a conclusive fashion. Moreover, the adoption of this guideline helps show that, as a purely factual matter, interlocking directorships strongly indicate a control relationship. Of course, as previously recounted, both Brown and O'Connor, the president of Highland, were on Texas Eastern's board of directors.